Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
Andrew J. Somers, #19078
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com
andrew@briansking.com

Attorneys for Plaintiff

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CULLEN L., individually and on behalf of C.L. a minor,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, UNITED BEHAVIORAL HEALTH, BENEFITS COMMITTEE OF CREDIT SUISSE, and the CREDIT SUISSE SECURITIES (USA) LLC GROUP HEALTH CARE PLAN,<br><br>　　　　　Defendants. | COMPLAINT |

　　　　Plaintiff Cullen L., individually and on behalf of C.L. a minor, through his undersigned counsel, complains and alleges against Defendants United Healthcare Insurance Company, United Behavioral Health (collectively "United"), the Benefits Committee of Credit Suisse ("the Plan Administrator"), and the Credit Suisse Securities (USA) LLC Group Health Plan ("the Plan"), as follows:

1

## PARTIES, JURISDICTION AND VENUE

1. Cullen and C.L. are natural persons residing in Wake County, North Carolina. Cullen is C.L.'s father.

2. United Healthcare Insurance Company is headquartered in Hennepin County, Minnesota and was the third-party claims administrator, as well as the fiduciary under ERISA for the Plan during the treatment at issue in this case. United Behavioral Health is the mental health arm of United Healthcare Insurance Company.

3. At all relevant times United acted as agent for the Plan and the Plan Administrator.

4. The Plan Administrator is the designated administrator for the Plan.

5. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). Cullen was a participant in the Plan and C.L. was a beneficiary of the Plan at all relevant times.

6. C.L. received medical care and treatment at Waypoint Academy ("Waypoint") from May 23, 2022, to May 26, 2023. Waypoint is a licensed treatment facility located in Weber County Utah, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

7. United denied claims for payment of C.L.'s medical expenses in connection with his treatment at Waypoint.

8. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

9. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because United does business in Utah, and has a large facility in Salt Lake County where the appeals and

claims relevant to this case were sent for processing, and the treatment at issue took place in Utah.

10. In addition, the Plaintiff has been informed and reasonably believes that litigating the case outside of Utah will likely lead to substantially increased litigation costs he will be responsible to pay and that would not be incurred if venue of the case remains in Utah. Finally, given the sensitive nature of the medical treatment at issue, it is the Plaintiff's desire that the case be resolved in the State of Utah where it is more likely both Cullen and C.L.'s privacy will be preserved.

11. The remedies the Plaintiff seeks under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), for an award of statutory damages against the Plan Administrator pursuant to 29 U.S.C. §1132(c) based on the failure of the Plan Administrator and its agents, to produce within 30 days documents under which the Plan was established or operated, an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### Waypoint

12. C.L. was admitted to Waypoint on May 23, 2022, due to issues which included anxiety, negative self-image, school refusal, fear of failure, depression, increasingly severe isolation, and anger issues which had not been able to be successfully resolved at other levels of care.

13. In a letter dated May 25, 2022, United denied payment for C.L.'s treatment at Waypoint. The letter offered the following justification for the denial:

    > Authorization unavailable for Mental Health RTC (Residential Treatment Center) due [sic] Service Components Not Consistent with LOC Guidelines.

    > According to the member's plan documents, the requested service Residential Treatment at Way Point Academy is excluded from coverage due to facility not being available for authorization approval. This means your request cannot be approved because it is not a covered benefit.

14. On May 11, 2023, Cullen submitted a level one appeal of the denial of payment for C.L.'s treatment. Cullen wrote that he was entitled to certain protections under ERISA during the appeal process, including a full, fair, and thorough review conducted by appropriately qualified reviewers whose identities were clearly disclosed, which took into account all of the information he provided, and which gave him the specific reasons for the adverse determination, referenced the specific plan provisions on which the denial was based, and which gave him the information necessary to perfect the claim.

15. He asked that the reviewer be knowledgeable about generally accepted standards and clinical best practices for residential programs in the state of Utah where Waypoint was located, and that they be trained in the details of MHPAEA in order to address his concerns regarding a violation of the statute.

16. Cullen stated that United was required to identify the specific reason for the denial and to reference the applicable plan language. He contended that United's vague statement that the services at Waypoint were not consistent with guidelines did not meet this burden and was too vague for him to meaningfully appeal the denial. He asked how he was supposed to advocate effectively for his child without even knowing why treatment was denied.

4

17. Cullen wrote that the language of his benefits plan superseded any internal guidelines and that Waypoint satisfied these requirements and should have been approved. He further noted that it was unclear which guidelines United had used to deny payment. He wrote that United referenced "LOC Guidelines," but pointed out that these had been retired years ago. He asked to be provided with a copy of the specific guidelines used.

18. He stated that the Plan offered coverage for residential treatment (although it failed to define the term in his benefits booklet), and that as Waypoint was duly licensed as a residential treatment center by the state of Utah, accredited by The Joint Commission, and was compliant with all governing state regulations, C.L.'s treatment at Waypoint should have been approved, especially given The Joint Commission's "extremely high" accreditation standards.

19. Cullen stated that while he was unsure which guidelines United had used, the CALOCUS-CASII guidelines that it generally employed specifically refrain from imposing prescriptive requirements for each level of care or level of service intensity and were "purposefully broad" in order to encompass individual treatment needs and variances in facilities. He contended that Waypoint met all requirements in these guidelines.

20. He asked that if United maintained that Waypoint did not meet any requirement that it provide him a "list of exactly which requirements are not met along with any evidence you have supporting your position." He stated that United was acting in bad faith and of capriciously denying care for no justifiable reason in violation of its fiduciary duty.

21. He expressed concern that United's denial was a violation of MHPAEA. He wrote that MHPAEA compelled insurance plans to ensure that benefits for mental health services were offered at parity with benefits for analogous medical or surgical services.

22. He identified skilled nursing, subacute rehabilitation, and inpatient hospice facilities as some of the medical or surgical analogues to the residential care C.L. received.

23. Cullen argued that because Waypoint met all the necessary prerequisites for treatment to be approved but had been flagged for automatic denial based on undisclosed internal protocols directing to reducing costs for residential treatment of mental health disorders, United appeared to be imposing restrictions on facility type or provider specialty in a manner which violated MHPAEA.

24. He asked if he was mistaken, for United to produce evidence of it systematically excluding analogous medical or surgical facilities in this manner.

25. Cullen wrote that he had evidence that United did not single out Waypoint specifically in its flagged facility denials, but systematically discriminated against a wide variety of out of network residential treatment centers. He included a list of some of the facilities that he was aware of which United habitually denied on a similar basis.

26. He asked United to perform a MHPAEA compliance analysis to ensure the Plan was being administered in accordance with MHPAEA and asked to be provided with physical copies of the results of this analysis.

27. In addition Cullen asked to be provided with a copy of all documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits he was seeking, any administrative service agreements that existed, any clinical guidelines or medical

necessity criteria utilized in the determination (along with their medical or surgical equivalents, whether or not these were used), together with any reports or opinions regarding the claim from any physician or other professional, along with their names, qualifications, and denial rates (collectively the "Plan Documents").

28. In a letter dated July 11, 2023, United upheld the denial of payment for C.L.'s treatment. The letter attributed to Svetlana Libus stated that the denial had been upheld as:

    I've uphold [sic] a denial for the medical services listed below:

    Child & Adolescent Service Intensity Instrument© (CASIl) Level 5: Non-Secure 24-Hour Services with Psychiatric Monitoring (Mental Health Residential Treatment) for dates of service from 5/23/2022 to 05/26/2023

    I've upheld a denial because Way Point Academy Residential Treatment Program did not meet clinical service guidelines for Residential Level of Care.
    The facility has been designated as not available for authorization because the offered services were not consistent with guidelines.

    Further questions regarding this status can be directed to Optum Practice Management.

29. On September 5, 2023, Cullen submitted a level two appeal of the denial of payment for C.L.'s treatment. He reiterated that C.L.'s treatment was a covered benefit under the terms of the Plan.

30. He argued that United had not respected his rights under ERISA and had not meaningfully responded to, or even acknowledged, any of the arguments he made in the appeal process, including his argument that United was in violation of MHPAEA.

31. He wrote that United had failed to produce the documentation he had requested, and again broadly referenced criteria without providing any evidence or reasoning of how these criteria were used.

32. He objected to United's "conclusory responses" and asked it to act in accordance with its fiduciary duty. He argued that a brief reference stating that his appeal materials had been "reviewed" with no explanation of how these documents informed the appeal decision was not sufficient and suggested United was failing to take its obligations seriously. He again asked for a copy of the Plan Documents.

33. In a letter dated November 13, 2023, United upheld the denial of payment for C.L.'s treatment. The letter gave the following justification for the denial:

> We have denied the medical services/items listed below requested by you or your provider. Mental Health Residential Treatment care from 05/23/2022 through 05/26/23, for 369 days. We denied the medical services/items listed above because, we reviewed the Optum Provider Details and Case Notes and the various Appeals Materials. Coverage is not available because the facility was in an Authorization Unavailable status during the Mental Health Residential Treatment days of service that are the focus of this review, 05/23/2022 through 05/26/2023, for 369 days. The main reasons for this status were because service components were not consistent with Child and Adolescent Service Intensity Instrument (CASII) and then later - in addition, because of Quality of Care/Member Safety issues. Hence, coverage for this Mental Health Residential Treatment care is not possible. The request cannot be approved at this time by your health plan. As this is an administratively based review, no potential alternate level of care is noted.

34. In a revised letter dated March 27, 2024, United reviewer Svetlana Libus who also signed the July 11, 2023, letter despite ERISA's direct prohibition of reusing reviewers who had previously evaluated a claim, again denied payment for C.L.'s treatment. The letter abandoned the previous facility exclusion rationale and stated that the denial had been upheld as:

> You record [sic] shows you were willing and able to participate in treatment. You were following all treatment recommendations. Your behavior was safe and predictable. You had no problems to take care of daily needs, your thinking was clear. You did not have any medical problems or other issues that were interfering with your treatment. You had supportive family and safe home

35. It is unclear why the March 27, 2024, letter was marked as a revised letter or even why it was issued in the first place, as United's November 13, 2023, denial letter stated that all internal appeals had been exhausted. Regardless, the denial letter changed the rationale to medical necessity grounds, but as it was sent after the Plaintiffs no longer had appeal options, they were unable to submit tailored arguments or evidence showing medical necessity.

36. As he had yet to receive the documentation he requested, Cullen made one last attempt to procure these items by sending a letter dated January 23, 2024, directly to the Plan Administrator. The letter asked for the following items:

- Disclosure of the identities of all individuals with clinical or medical expertise who evaluated the treatment for my son, [C.L.], at Waypoint Academy, copies of those individuals' *curriculum vitae*, copies of any memoranda, emails, reports, or other documents reflecting the rationale of the reviewers in denying coverage for [C.L.]'s claim;
- A complete copy of both the medical necessity criteria utilized by United Behavioral Health in determining that [C.L.]'s treatment was not medically necessary and that treatment for him at a lower level of care was appropriate;
- A complete copy of the medical necessity criteria utilized by the Plan for skilled nursing facilities, sub-acute inpatient rehabilitation treatment, and inpatient hospice treatment. This is necessary to allow me to carry out an evaluation of whether the Plan has complied with the requirements of the federal Mental Health Parity and Addiction Equity Act;
- Copies of documents identifying the self-compliance analysis the Plan and United Behavioral Health have carried out to determine the extent to which they are complying with the federal Mental Health Parity and Addiction Equity Act.
- Complete copies of any and all internal records compiled by United Behavioral Health and Credit Suisse in connection with [C.L.]'s claim including, but not limited to, telephone logs, memoranda, notes, emails, correspondence, or any other communications;
- A copy of the summary plan description, master plan document, certificate of insurance, insurance policy, and any other document under which [C.L.]'s insurance plan is operated;
- Copies of any and all administrative service agreements, contracts or other documents which described and defined the relationship, rights and obligations of and between you, the plan administrator, and United Behavioral Health; and
- Copies of any and all documents outlining the level of accreditation required for residential treatment programs;

9

- Copies of any and all documents showing whether analogous levels of care to residential treatment programs also require these levels of accreditation; and
- Copies of documents identifying the process, strategies, evidentiary standards, or other factors the Plan used to determine that the treatment at Waypoint Academy was experimental and investigational.
- Copies of documents identifying the processes, strategies, evidentiary standards, and other factors used to determine whether treatment at sub-acute inpatient programs for medical or surgical treatment is experimental and investigational.
- Copies of documents identifying the processes, strategies, evidentiary standards, and other factors used to apply a nonquantitative treatment limitation with respect to medical/surgical benefits and mental health or substance use disorder benefits under the plan.

37. Cullen did not receive the documentation he requested.

38. The Plaintiff exhausted his pre-litigation appeal obligations under the terms of the Plan and ERISA.

39. The denial of benefits for C.L.'s treatment was a breach of contract and caused Cullen to incur medical expenses that should have been paid by the Plan in an amount totaling over $155,000.

## **FIRST CAUSE OF ACTION**

**(Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B) Against United and the Plan)**

40. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as United, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

41. United and the Plan failed to provide coverage for C.L.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

42. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

43. The denial letters produced by United do little to elucidate whether United conducted a meaningful analysis of the plaintiff's appeals or whether it provided him with the "full and fair review" to which he is entitled. United failed to substantively respond to the issues presented in Cullen's appeals and did not meaningfully address the arguments or concerns that the Plaintiff raised during the appeals process.

44. Despite repeated requests, United never cited to any language in the plan or other criteria which offered any justification for its refusal to pay for benefits.

45. Then, more than six months after Plaintiffs had submitted their level two appeal and had been told they had exhausted their appeal rights, United inexplicably issued a letter which appears to have abandoned its arguments regarding a facility exclusion in favor of a medical necessity denial that Plaintiffs were unable to appeal.

46. United's apparent reversal of its denial rationale that it upheld throughout the appeal process constitute a tacit admission that it denied payment in error in each of its letters and should have evaluated the claims for medical necessity.

47. This letter was signed by a reviewer who had been directly involved in a prior denial, in violation of both ERISA's claim procedure regulations and the express terms of the Plan which directly state that, "The individual who will conduct the review process will not be the individual who made the initial denial nor the subordinate of such individual."

//

11

48. United and the agents of the Plan breached their fiduciary duties to C.L. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in C.L.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of C.L.'s claims.

49. The actions of United and the Plan in failing to provide coverage for C.L.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity and facility eligibility criteria.

50. While the presentation of alternative or potentially inconsistent claims in the manner that Plaintiffs state in their first, second, and third causes of action is specifically anticipated and allowed under F.R.Civ.P. 8, Plaintiffs contend they are entitled to relief and appropriate remedies under each cause of action.

## SECOND CAUSE OF ACTION

**(Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3)
Against United and the Plan)**

51. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of United's fiduciary duties.

52. MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

53. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and makes

illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

54. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

55. The medical necessity and facility eligibility criteria used by United for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

56. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for C.L.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

57. When United and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice.

58. United and the Plan evaluated C.L.'s mental health claims using criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity

because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

59. Cullen repeatedly presented information to demonstrate that C.L.'s treatment met all the necessary requirements for approval under the Plan, yet the facility at which C.L. was treated still had been blacklisted by United. United has yet to explain its reasoning.

60. Due to United's refusal to provide documentation or to elaborate on its methods, Cullen is unable to assert a cause of action for a violation of MHPAEA with more specificity, but does allege that United has processes in place to limit the availability of out-of-network residential treatment for mental health and substance use disorders in a manner that it does not implement for analogous medical or surgical care.

61. Cullen produced evidence that United similarly blacklists other residential facilities in the same way to save money at the expense of participants and beneficiaries who need coverage for treatment of their mental health and substance use disorder conditions.

62. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and United, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

63. United and the Plan did not produce the documents the Plaintiff requested to evaluate medical necessity and MHPAEA compliance, nor did they address in any substantive capacity the Plaintiff's allegations that United and the Plan were not in compliance with MHPAEA.

64. In fact, despite Cullen's request that United and the Plan conduct a parity compliance analysis and despite the direction from the Department of Labor that ERISA plan and claim administrators perform parity compliance analyses, United and the Plan have not provided Cullen with any information about whether they have carried out any parity compliance analysis and, to the extent that any such analysis was performed, United and the Plan have not provided Cullen with any information about the results of this analysis.

65. The violations of MHPAEA by United and the Plan are breaches of fiduciary duty and give the Plaintiff the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

    (a) A declaration that the actions of the Defendants violate MHPAEA;

    (b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

    (c) An order requiring the reformation of the terms of the Plan and the criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

    (d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

    (e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of MHPAEA;

    (f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiff as make-whole relief for his loss;

(g) An order equitably estopping the Defendants from denying the Plaintiff's claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendants to the Plaintiff for his loss arising out of the Defendants' violation of MHPAEA.

## THIRD CAUSE OF ACTION

### (Request for Statutory Penalties Under 29 U.S.C. §1132(a)(1)(A) and (c) Against the Plan Administrator)

66. United, acting as agent for the Plan Administrator, is obligated to provide to participants and beneficiaries of the Plan within 30 days after request, documents under which the Plan was established or operated, including but not limited to any administrative service agreements between the Plan and United, the medical necessity criteria for mental health and substance abuse and medical necessity criteria for skilled nursing and rehabilitation facilities.

67. In spite of Cullen's requests during the appeal process for United to produce the documents under which the Plan was operated, United repeatedly failed to produce to the Plaintiff within 30 days after written requests those documents, including but not limited to any administrative service agreements between the Plan and United, the medical necessity criteria for mental health and substance use disorders, and the medical necessity criteria for skilled nursing and rehabilitation facility treatment.

68. After United repeatedly failed to provide these materials, Cullen sent one final letter dated January 23, 2024, to both United and the Plan Administrator again requesting the documents which he was statutorily entitled to receive upon request. Neither United nor the Plan Administrator complied with Cullen's request for documents.

69. The failure of the Plan Administrator and its agent United, to produce the documents under which the Plan was operated, as requested by the Plaintiff, within 30 days of Cullen's request for ERISA documents, provides the factual and legal basis under 29 U.S.C. §1132(a)(1)(A) and (c) for this Court to impose statutory penalties up to $110 per day on the Plan Administrator from 30 days from the date of each of these letters to the date of the production of the requested documents.

70. In addition, Plaintiff is entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiff seeks relief as follows:

1. Judgment in the total amount that is owed for C.L.'s medically necessary treatment at Waypoint under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiff's Second Cause of Action;

3. For an award of statutory penalties of up to $110 a day against the Plan Administrator after the first 30 days for each instance of the Plan Administrator and its agent United's failure or refusal to fulfill their duties, to provide the Plaintiff with the documents he had requested;

4. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

5. For such further relief as the Court deems just and proper.

DATED this 13th day of November, 2024.

By    s/ Brian S. King
       Brian S. King
       Attorney for Plaintiff

County of Plaintiff's Residence:
Wake County, North Carolina